Williams, J.
The two propositions upon which the plaintiff in error asks the reversal of the judgments below, are embraced in his exceptions to the report of the referee, and, briefly stated, are:
1. That Wise having received no notice of the acceptance of the contract of guaranty, never became liable to the plaintiff; and
2. That some of the notes indorsed by Miller were renewed after the defendant notified him on the 26th day of October, 1875, that he would stand responsible for no liabilities thereafter created, and as to such, he was discharged from his obligation.
Both of these propositions are based upon the hypothesis that the contract is purely one of guaranty, and that the defendant sustains no relation to the plaintiff but that of a guarantor. Whether this be the true conception of the agreement, will be considered hereafter.
1. Grant, however, that it is simply a contract of guaranty, under the facts found by the referee, was notice by the plaintiff that he accepted the contract, or of the indorsements made by him thereunder, necesary to fix a liability upon the defendant?
Upon this point it is contended for plaintiff in error, that where the guaranty is indefinite in time and amount, with no obligation resting upon the guarantee to act upon it, authority and reason have settled the rule that notice of his acceptance *393 of, and intention to act under the guaranty, and of the principal’s default, are necessary to charge the guarantor.
It must be admitted that there is irreconcilable conflict in the decisions upon the question both in regard to the cases in which notice is necessary, and the ground upon which the necessity of the notice is placed. Some American cases hold that upon every guaranty for future advances or credit, it is the duty of the party making the advances or extending the credit, to give notice to the guarantor of his acceptance of, and consent to act under the guaranty; and the tenor of these decisions is, that guaranties for future advances or credit, are peculiar mercantile contracts, with an implied condition that notice of acceptance and intention to act under them should be given. While the English cases generally, and many American cases, hold that the rule requiring notice by the guarantee of his acceptance of the guaranty and his intention to act under it, applies only where the instrument being in legal effect, merely an offer or proposal, such acceptance is necessary to that mutual assent, without which there can be no contract. Since the case of Powers v. Bumcratz, 12 Ohio St. 273, the latter has been the rule in Ohio'. In the opinion of the court in that case, which contains an extended review of the cases on the subject, Gholson, J., says: “ We have examined some of those cases in which the guaranty being indefinite as to the amount and time of the advances, something might be expected in the pleadings or points made, as to notice of the acceptance of the guaranty, but nothing of the kind appears j” and in support of the conclusion that such notice is not necessary cites Paige v. Parker, 8 Gray, 211, where it is said: “ On this point a distinction which is sometimes overlooked is to be taken between a guaranty and an offer of a guaranty. In the ease of an offer of a guaranty, as in the case of any other offer or proposal, an acceptance thereof, seasonably made known to the party offering, is necessary to the completion of the contract. But express notice of the acceptance of an absolute guaranty is not always, if ever, necessary for the purpose of binding the guarantor. In the state of New York the courts hold that no notice of acceptance is necessary where the guaranty is abso *394 lute.” Gholson, J., then proceeds: “ The distinction thus pointed out is the one sustained by the authorities we have examined, and the question whether an instrument be an absolute guaranty, or a mere offer to guaranty, depends upon a fair construction of its terms. Applying this rule, and rejecting that which would make every undertaking to be responsible for a credit to be given to a third person, a mere offer or proposal to guaranty, it is scarcely necessary to say that the instrument sued on in this case is an absolute guaranty.”
In that case Gholson, J., quotes, with approval, from the opinion of Cowen, J., in Douglass v. Howland, 24 Wend. 35-49, as follows: “ I am aware that there are a class of eases which hold that, under a contract guaranteeing a debt yet to be made by another, the guarantor is not liable to a suit without notice that the guaranty has been accepted and acted upon. Indeed, they go farther; if notice of accepting the guaranty be not given within a reasonable time, no debt whatever arises. I will only say that these cases have no foundation in English jurisprudence, where adjudications are numerous and clear the other way.”
And in the case of Whitney v. Groot, 24 Wend. 82, it was held that a guaranty addressed to a mercantile firm in these words, “ we consider Mr. J. V. E. good for all he may want of you, and we will indemnify the same,”, is a valid instrument binding upon the guarantors; and that they were not entitled to notice of the acceptance of the guaranty or of the sale and delivery of goods under it to the principal. Nelson, C. J., says, “ The instrument did not contemplate any notice of acceptance, or of the sales to the defendant made in pursuance of it; it was not a proposition to become surety for Wan Eps, but an absolute undertaking to pay for the goods if he did not, and obviously contemplated a sale and delivery on presentation. Unless there is something in the nature of the contract or terms of the writing creating or implying the necessity of acceptance or notice as a condition of liability, neither are deemed requisite.” And in Paige v. Parker, supra, it was held that, “a guaranty delivered by the guarantor to the guarantee, of the payment of any sales to be made to a third per *395 son, binds the guarantor without proof of a promise of the guarantee to make such sales, or of formal notice of the acceptance of it, or of notice to the guarantor of each sale as it is made.”
The application of the doctrine of these cases to the contract' in question does not leave this branch of the case' doubtful. The instrument is in no sense a mere offer or proposal of guaranty to Miller; it is an absolute and unconditional contract of indemnity; the parties thereby jointly and severally bind themselves to Miller that they will, in proportion to the amount of stock held by each in the corporation, protect him against all loss and damage sustained by him by reason of his indorsements of the company's paper. The contract is signed by Miller as well as Wise, and, under the authorities, no notice of acceptance was necessary. But if it were, the result must be the same. The referee reports that the contract was entered into by all the parties on the 2nd day of January, 1871, to obtain credit for the corporation; and after it was signed by each, it was delivered to Clark to hold for the parties; that the plaintiff, acting on the faith of it, indorsed the company's paper; and that Wise knew he intended to act upon it. Beside, the contract recites that it was entered into for the mutual benefit of all the parties. The cotemporaneous execution of the agreement by all the contracting -parties, with the intention that it should be acted upon, for a purpose beneficial to the promisors, and its delivery by the parties to a third person for their uses, which is equivalent to a delivery by each to the others, is a sufficient acceptance and notice thereof. Any further acceptance and notice would be idle ceremony.
2. The referee charged the defendant with his proportion of the amounts paid by Miller, on notes originally indorspd by him after the date of the indemnity agreement, and renewed after the notice of October 26, 1875. The plaintiff in error claims he should not have been so charged.
The notice is not in writing. As found by the referee, it notified Miller that Wise revoked the contract, and would stand responsible for no liabilities thereafter created. Usually it requires the same meeting of minds of the parties to alter or *396 terminate a contract, that it does to make it. This contract having been made by the stockholders of the corporation for their mutual benefit, with no reservation of such right to any one or part of the contracting parties, it may be doubted whether it could be modified or terminated without the concurrence of all. However this may be, it would seem clear that after obligations have been incurred by one upon the faith of it, the liability of the others under it should continue until performance of its conditions by them. While sureties are favorites of the law, and may stand upon the letter of their contracts, there is no duty imposed upon courts to search diligently for channels of escape from their obligations. It is the policy of the law to give effect to their agreements as it is to those of all other parties, according to their terms and purport. It cannot be denied that in the absence of the notice, the indorsements upon the renewals were as fully within the terms of the defendant’s engagement, as those upon the original notes; and hence, if the defendant was released from his liability under the contract to indemnify the plaintiff against his indorsements on the renewals, it must be by virtue of the notice. He can ask no more from his notice than it fairly imports. It stated in terms “ that he would stand responsible for no liabilities thereafter created.” Were these renewals the creation of new liabilities, liabilities “ thereafter created; ” or were they mere changes in the forms and evidences' of already existing liabilities ? In Horsey v. Heath, 5 Ohio, 353, it appeared that Lettler and Heath were partners in a drove of cattle, and borrowed money from bank on their note indorsed by Horsey. Afterward Heath renewed the note in his own name indorsed by Horsey; neither Lcttler’s nor the firm name being on it. Horsey paid the debt and sued Heath and Lettlor’s administrator (Lettler being dead.) Lettler’s administrator alone defended, and claimed that although he was liable on the original note, the renewal by Heath with Horsey’s indorsement made Horsey Heath’s individual security,- and discharged Lettler’s estate. But the court held otherwise. In the opinion, Wright, J., says: “No new debt was created (by the renewal). The old one remained outstanding, although to conform to the cus *397 tom of business in the bank when continued and further time was given, the evidence of the debt was from time to time changed. No one ever in fact paid the debt but the complainant. * * * When the identity of the debt is ascertained, it is now settled that a mere change of the evidence .of it, will not affect the liability of the real parties in a court of chancery.”
In the case of Bush v. Critchfield, 5 Ohio, 109, the plaintiffs Bush and Tuttle furnished McConnell merchandise to sell on commission, for which he agreed to faithfully account. The defendants became bound as his guarantors. Afterward the plaintiffs and McConnell had a settlement of their accounts, on which McConnell was found to be indebted to the plaintiffs in a large sum, for one-half of which he gave his note to Bush, and for the other half gave his note to Tuttle. These notes not having been paid, suit was brought against the defendants on their guaranty. Their defense was that by taking the notes they were released. But the court held they were not, and gave judgment against them. In the course of the opinion Collet, J., says: “But that these notes to Bush and Tuttle so changed the contract with McConnell and the plaintiffs as to be a discharge of the defendants on an inquiry for damages, cannot bo successfully contended. * • * * The taking of these notes in this -way did not in any way injure them. The defendants covenanted -with the plaintiffs, that if they would deliver the goods to McConnell, they would indemnify them for any loss they might sustain, by McConnell not paying over the proceeds of their sale. Relying on this, the plaintiffs advanced their goods to McConnell, and he, of the proceeds of these goods, has kept back, and still keeps back, twelve hundred and sixteen dollars. Every principle of justice requires that the defendants should pay this sum to the plaintiffs.”
In this state the law seems well settled, that a note given by way of renewal or otherwise for a precedent debt does not have the effect of creating a new debt, or operate as a satisfaction or discharge of the debt for which it is given, unless it is so agreed by the parties. McNaughten v. Partridge, 11 Ohio, 223; Merrick v. Boury, 4 Ohio St. 60. It does not appear from the *398 findings of the referee, that there was such agreement in regard to any of the renewals involved in this case after the 25th of October, 1875, nor anything giving rise to the presumption that there was. But whether the effect of these renewals was to create new liabilities, or simply to change the evidences of the pre-existing debts, we do not regard as of much practical consequence; for if they created new debts, they paid and extinguished those for which they were given; the latter were contracted, and Miller’s liability thereon by his indorsement incurred before the notice; the corporation being then insolvent, Miller’s, credit upon the renewals, which were afterward paid by him, was the means of payment. This appears from the report; and although in some causes of action in the petition, the defendant’s indebtedness to plaintiff, is stated to be for money paid on the renewals made after the notice, while strictly, they were payments by the renewals of the debts created before the notice, the variance is more technical than substantial, and amendments might have been allowed at any time to conform the petition to the facts. As upon the whole report the proper judgment was rendered upon the undisputed facts, the judgment should not be reversed because of such variance, when it is apparent the same judgment must ultimately be rendered. The defendant covenanted with the plaintiff, that if he would indorse the paper of the corporation for the former’s benefit, he would protect and indemnify him. Relying on this, the plaintiff by his indorsements incurred large liabilities which he was compelled to pay, and against which the defendant has neither protected nor indemnified him. It in no way concerned the defendant whether the plaintiff' paid in money on the maturity of his obligations so incurred, or by his credit obtained time on his renewals which he afterward paid. In either event he has paid the debt contracted on the faith of defendant’s covenants, and thus borne tne burden the defendant by his agreement made his own, and from which he promised to relieve the plaintiff.
On the other hand, as we have before seen, if the renewals created no new debt, but were mere changes in the form and evidence thereof, the original remaining unpaid or otherwise *399 unextinguished, the notice by its terms did not apply to them, and the defendant’s liability under the contract remained unaffected by it.
3. But is the undertaking of the defendant simply that of a guarantor? He and his co-obligors were the stockholders of the corporation, and indirectly, at least, liable on its indebtedness to an amount equal to their stock; they were beneficially interested in its credit, and the property thereby obtained; and it was to their mutual advantage to advance its prosperity, and develop its purposes. Recognizing this, “ in consideration of the mutual benefit derived by the stockholders of the company,” by reason of the indorsement of its paper they bound themselves to Miller that they would protect him against loss and damage sustained by such indorsements. By their covenant of indemnity to Miller, who, on the faith of it, indorsed the paper of the company for their mutual benefit, they expressly created an obligation like that which the law implies on the part of every principal, and his relation to them, if not strictly that of a surety, is analogous to it, giving rise to corresponding rights and remedies. The engagement of every principal is to indemnify and protect his surety. This is implied from the relation of principal and surety, which generally arises, when one becomes bound at the request and for the benefit of another. A surety it is said “ is a person who being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor or wholly unknown.” Smith v. Shelden, 35 Mich. 42. The chief difference between the ordinary case of principal and surety, and the one we are now considering, consists in the mode in which the relation is established. Here, the stockholders who signed the agreement, expressly assume the position of principals, stipulate in terms to protect and indem *400 nify their surety, and agree among themselves upon the proportion of the liability each shall discharge. Every element of suretyship is here present, as much as, if in contracting an original indebtedness, the contract itself be made to show on its face, that one of the obligors is surety merely. We see no reason why the plaintiff, after the notes indorsed by him became due, and before he paid them, could not have maintained an action against the stockholders who signed the agreement, to compel them to pay the debt, and protect him therefrom according to the terms of their covenant.
Wooldridge v. Norris, 6 L. R., Eq. Gas. 410, was a case where a surety on a bond to secure a money debt, was secured by another bond of indemnity entered into by the principal debtor’s father, who afterward died. The creditor having applied to the surety for payment, he filed his bill against the father’s executors to compel them to pay the debt, and for indemnity ; his bill was sustained.
Sir G. M. Gifford, V. C., deciding the case, said: “Now as regards the right of the plaintiff to file a bill quia timet, the principle is clearly laid down by Lord Redesdale in these terms:. ‘A court of equity will also prevent injury in some cases, by interposing before any actual injury has been suffered ; by a bill which has sometimes been called a bill quia timet, in analogy to proceedings at the common law where in some cases a writ may be maintained'before any molestation, distress or impleading. Thus a surety may file a bill to compel the debtor on a bond in which he has joined, to pay the debt when due, whether the surety has been actually sued for it or not; and upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances.’ ”
This view of the relation of the parties disposes of both propositions urged by the plaintiff in error, and results in the affirmance of the judgment.

Judgment affirmed.